IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DARREN HARTNESS                                          PLAINTIFF

v.                        CASE NO. 4:07-CV-00000269 GTE

UNION PACIFIC RAILROAD COMPANY                           DEFENDANT

## UNION PACIFIC RAILROAD COMPANY'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF BOB WHITE AND JAY MARSH

Union Pacific Railroad Company moves the Court to exclude the opinions and testimony of Bob White and Jay Marsh because (1) Mr. White's opinions are based on insufficient subjective facts and an unreliable methodology and (2) Mr. Marsh relies on Mr. White's opinions to reach his conclusions. Mr. White's opinions are nothing more than the subjective, self-reported statements of the Plaintiff with no independent support. Additionally, Mr. White's report fails to identify or explain his methodology, fails to take into account crucial factors, including Mr. Hartness' actual or self-reported income, and contains only his *ipse dixit*. Because of its unreliability and inability to assist the trier of fact, Mr. White's report and testimony should be excluded at trial. Because Mr. White's conclusions are indispensable to Mr. Marsh's conclusions, Mr. Marsh's report and testimony should be excluded at trial.

## STATEMENT OF FACTS AND EXPERT OPINIONS

Darren Hartness filed a Federal Employer Liability Act claim against Union Pacific on March 22, 2007 for a back injury allegedly sustained on November 14, 2005. *See* Compl. Mr. Hartness began working for Union Pacific in January 2004,

and quickly moved up to the position of Engineer.  Hartness Dep., attached hereto as Ex. A, at 20, 27-28; Marsh Report, attached hereto as Ex. B, at 2-3.  Before coming to work for Union Pacific, Mr. Hartness worked as a truck driver for approximately 15 years.  Ex. A at 13-19.

Mr. Hartness alleges that on November 14, 2005, as he was being transported from his hotel in Dexter, MO to the Dexter train depot, the van transporting him ran over a curb and caused injury to his back.  *See* Compl.  It is important to note that the month before the accident Mr. Hartness visited a chiropractor on three separate occasions complaining of similar back problems.  Ex. A at 66, 94, Ex. 4.  After the November 14 incident, Mr. Hartness was unable to work for several months and underwent back surgery.  Ex. A at 70-72.  Mr. Hartness did return to work after the surgery.  Ex. A at 70-72.  But shortly after returning to work Mr. Hartness started complaining of neck problems and was again unable to work.  Ex. A 72-73.  In August 2007, after filing the present suit, Mr. Hartness voluntarily resigned from his position at Union Pacific and returned to truck driving.  Ex. A at 82.

Mr. White is a vocationalist.  White Dep., attached as Ex. C, at 5-15.  Plaintiff retained Mr. White to testify at trial regarding Mr. Hartness' ability to continue is his current occupation as a truck driver and his earning capacity in that position.  Vocational Evaluation, attached as Ex. D, at 1, 4; Supplemental Vocational Evaluation, attached as Ex. E, at 1.  Mr. White asserts two opinions in his initial and supplemental evaluations (1) that the "best case scenario for [Mr. Hartness] is to continue in his current occupation until he can take early retirement at age 62;" and (2) that Mr. Hartness' "earning capacity would most probably fall between 20,900

and 26,400." Ex. D. at 4; Ex. E at 1. During his deposition Mr. White stated that his initial and supplemental reports contained all of the opinions he expected to express during this case and the basis and reasons for his opinions. Ex. C at 41.

Mr. Marsh is an economic consultant. Ex. B at 1. Mr. Marsh was retained by Plaintiff to provide an opinion on Mr. Hartness' economic damages as a result of his alleged injuries. Ex. B at 2, 5. In reaching his conclusions, Mr. Marsh relied on Mr. White's opinions that Plaintiff "is likely to take early retirement at age 62, and he will fall in the 10th to 25th percentile earnings of the average Arkansas tractor-trailer driver," which places his earning capacity between $20,900 and $26,400. Ex. B at 2-3, 5. Mr. Marsh used these figures to form his opinion regarding Plaintiff's lost earning capacity. Ex. B at 5.

In this motion Union Pacific seeks to exclude all of Mr. White's opinions as unreliable and Mr. Marsh's opinions because he relies on Mr. White's unreliable conclusions.

## ARGUMENT

**Standard for Admissibility of Expert Evidence.** Fifteen years ago in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the United States Supreme Court addressed the admissibility of expert testimony under the Federal Rules of Evidence. 509 U.S. 579 (1993). The Court found that the strict common law barriers to the admission of expert opinion testimony were relaxed by the adoption of the Rules, but not eliminated. *Daubert*, 509 U.S. at 588-89. The Court held that under the Rules the district court had a gatekeeping obligation to "ensure that any and all scientific[, technical, and other specialized] testimony or evidence admitted is not only relevant,

but reliable." *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Blue Dane Simmental Corp. v. American Simmental Assoc.*, 178 F.3d 1035, 1040 (8th Cir. 1999).

Today "[t]he opinion of a qualified expert witness is admissible if (1) it is based upon sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the expert has applied the principles and methods reliably to the facts of the case." *Pro Service Automotive, L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1215 (8th Cir. 2006) (citing Fed. R. Evid. 702). Courts can consider various factors in evaluating whether an expert's principles and methods are reliable, including

> (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community.

*Id.* at 1215 (quoting *Smith v. Cangieter*, 462 F.3d 920, 923 (8th Cir. 2006) (citing *Daubert*, 509 U.S. at 592-94, 113 S.Ct. 2786)).

Subjective or speculative expert testimony, on the other hand, "is not competent proof and contributes nothing to a legally sufficient evidentiary basis" and is not admissible. *J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001). And just because a methodology is generally accepted in the field does not mean that the expert's testimony is admissible. *Blue Dane*, 178 F.3d at 1040. "'[R]ather, it [is] the reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant.*'" *Id.* (emphasis in the original).

The burden of showing that an expert's testimony is admissible under Rule 702 is on the proponent of the expert testimony. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 -758 (8th Cir. 2006)

> To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. . . . To show that the expert testimony is relevant, the proponent must show that the reasoning or methodology in question is applied properly to the facts in issue.

*Id.* (internal citations omitted).

**Standard for Admissibility of Vocational Experts.** Admittedly, the Eighth Circuit has not yet directly addressed the applicability of Rule 702 and *Daubert* to vocational experts. But the general consensus has emerged in federal courts that a vocational expert's testimony is subject to the admissibility requirements of Rule 702 and *Daubert*. *Elcock v. Kmart Corp.*, 233 F.3d 734 (3rd Cir. 2000); *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809 (7th Cir. 2004); *see Blue Dane Simmental Corp. v. American Simmental Assoc.*, 178 F.3d 1035 (8th Cir. 1999); David B. Stein, *The Scientific Method is the Standard for Vocational Evaluation and Vocational Expert Testimony*, 7 Journal of Forensic Vocationology, issue 1 (Spring 2002). In *Elcock,* the Third Circuit Court of Appeals concluded that even though vocational rehabilitation is not a hard science, reliability and relevance must be satisfied. *Id.* at 747. To determine if a vocational expert's opinion is reliable and relevant courts look to the *Daubert* factors listed above.

The court in *Elcock* explained:

> Vocational rehabilitation is a social science that does not exactly mirror the fundamental precepts of the so-called harder sciences. However, the gist of the . . . *Daubert* factors are nonetheless implicated in this case. Just as a scientist would want to duplicate the outcome when evaluating a colleague's claim that he had developed a technique for cold fusion, a vocational rehabilitationist assessing [the proposed vocational expert's] disability determination would want to test the underlying hypotheses and review the standards controlling the technique's operation in an attempt to reproduce the results originally generated.

*Id.*

In *Elcock*, after holding the *Daubert* factors are applicable to vocational rehabilitation testimony, the Court focused on the "significant reliability questions" with the expert's testimony.  The court was concerned with the inability of the expert to explain his methodology and the impossibility of having another expert repeat the "subjective methods."   Further, the plaintiff presented no evidence supporting the expert's method.  The court characterized the expert's opinions as *ipse dixit* and noted that nothing requires the district court to admit such conclusions.

The Northern District of Iowa also excluded a vocational expert's testimony as unreliable because "the witness's methodology was subjective and unreproducible." *Weir v. Pioneer Hi-Bred Intern., Inc.*, 2000 WL 35533101 (N.D.Iowa 2000).  For guidance in reaching its holding the court looked to the Eighth Circuit's opinion in *Blue Dane* and the Third Circuit's opinion in *Elcock*.  *Id*.  The district court explained the

> report contains no evidence of the methodology used to arrive at his conclusions. Indeed, **his conclusions appear to be completely subjective, based upon his review of certain records and consideration of Weir's subjective opinions regarding his treatment by Pioneer.** Williams cites to no sources, published or otherwise, to support his conclusions, **nor does he even allude to**

> **standard methodologies employed by other vocational**
> **rehabilitation experts.** Furthermore, the substance of **Williams's**
> **opinions as presented in his report do not even address issues that**
> **are a proper subject of expert testimony; rather, they summarize**
> **[Plaintiff's] subjective opinions,** or they address factual issues for
> trial. In short, there is no evidence in the record upon which the court
> can base a conclusion that Williams's testimony will provide any
> assistance to the trier of fact in either understanding the evidence or
> determining a fact in issue.

*Id.* at 4 (emphasis added); *see also Ammons*, 368 F.3d 809.  Essentially, the expert

was using his weight and credibility to bolster the plaintiff's uncorroborated

statements. *Weir*, 2000 WL 35533101 at 4.

Recently, the Seventh Circuit Court of Appeals affirmed a district court ruling

excluding the testimony of a vocational expert as unreliable and irrelevant. *Ammons*,

368 F.3d 809.  The court found that the expert had failed to take into consideration

several factors the court felt were crucial to expert's conclusions.  *Ammons*, 368 F.3d

at 815.

> [The expert] admits that she did not observe any repairs being
> conducted while on the tour and that she did not observe all of the
> equipment and machinery that Ammons could be called on to maintain
> or repair." The district court also noted that Entenberg had failed to
> review Malfeo and McPherson's depositions and had not reinterviewed
> Ammons. The district court also held that Entenberg's report was
> speculative: "In light of her inability to form an opinion concerning
> [several pieces of equipment and machinery, Entenberg's] conclusion
> that Ammons could perform the 'vast majority' of his job functions is
> not based on any specific methodology applied to the facts but is only
> unsupported speculation."

*Ammons*, 368 F.3d at 815.

1. **Mr. White's Opinions Should Be Excluded Because They Are Subjective**
   **And Based On A Vague And Unreproducible Methodology.**

Here, Mr. White's expert opinions contain the same reliability and relevancy problems as the opinions proffered in *Elcock*, *Weir*, and *Ammons*. First, Mr. White relies on plaintiff's subjective and uncorroborated statements as the basis for his statements. Second, the methodology Mr. White used is vague, unexplained, and unreproducible. Finally, Mr. White admits that he neglected to take several crucial factors into consideration in reaching his conclusions.

A.    Mr. White's opinions are based on Mr. Hartness' subjective statements and insufficient facts.

The facts that form the basis of Mr. White's opinions are the subjective and uncorroborated statements of the plaintiff. The two opinions asserted by Mr. White in his initial and supplement reports are (1) that the "best case scenario for [Mr. Hartness] is to continue in his current occupation until he can take early retirement at age 62;" and (2) that Mr. Hartness' "earning capacity would most probably fall between 20,900 and 26,400." Ex. D at 4; Ex. E at 1. Mr. White based these opinions on an hour and a half interview with Mr. Hartness and a review of the deposition of a physician who performed surgery on Plaintiff. Mr. White chose not to give Mr. Hartness an intelligence or aptitude test or perform any other type of testing typically employed by a vocational expert. *See Elcock*, 233 F.3d 734; Ex. C at 28-29.

As in *Weir*, Mr. White's "conclusions appear to be completely subjective, based upon his review of certain records and consideration of [the plaintiff's] subjective opinions." In fact, throughout his deposition, Mr. White admitted that his conclusions were based on Mr. Hartness' self-reported statements. Ex. C at 28-29, 33, 35, 37, 43, and 54-56.

| | |
|---|---|
| By Mr. Williams: | So am I correct, the sum and substance of your evaluation of Mr. Hartness individually would be based upon an hour and a half interview that you had in this office with him? |
| A. | Correct. |

Ex. C at 29.

| | |
|---|---|
| By Mr. Williams: | All of the information that you received in the interview would have been what Mr. Hartness self-reported, correct? |
| A. | Yes, sir. In terms of age, education, and work history, that is correct. |
| Q. | And you did not do any sort of independent testing to verify or gauge the accuracy of that information, correct? |
| A. | Correct. |

Ex. C at 43.

| | |
|---|---|
| By Mr. Williams: | And all of this information that he reported to you is, as we said, self-reported? |
| A. | Correct. |

Ex. C at 54.

| | |
|---|---|
| By Mr. Williams: | Then under physical restrictions, you state that his limitations are related to pain in the upper and lower back? |
| A. | Yes, sir |
| Q. | No pain or way to predict when the pain increases will affect ability to work. All days are different, but when the pain increases, he has a limited ability to perform all primary strength activities? |
| A. | Correct |
| Q. | And unable to engage in areas of postural stress? |
| A | Yes. |
| Q. | And your basis again for that is what he reported to you, correct? |
| A. | Yes, sir. That's correct |

Ex. C at 56.

Further, Mr. White obtained incomplete information from Mr. Hartness during the interview. Mr. White failed to uncover that Mr. Hartness suffered from depression and anxiety, unrelated to the injury, and that Mr. Hartness had visited a chiropractor for similar back symptoms on three separate occasions the month before he was allegedly injured. Ex. C at 35, 37.

| By Mr. Williams: | Did Mr. Hartness tell you he was also taking antidepressants? |
|---|---|
| A | He did not. |
| Q | Is this the fact of somebody who may have depression, can that affect their employability and their ability to stay in the workforce? |
| A | I would agree that depending on the extent of it and severity of it, yes, it can . . . |
| Q | Did he tell you – did Mr. Hartness tell you that he had gone to see a chiropractor on two or three occasions prior to the injury for lower back pain and neck pain? |
| A | I honestly don't remember |

Ex. C at 35, 37.

Mr. White also failed to obtain important information about Mr. Hartness' current employment as a truck driver. Mr. White did not determine if Mr. Hartness was working as a regional or national driver or how many days of work Mr. Hartness actually missed due to back pain. Ex. C at 33, 46, 72. Both of these facts are important to determining Mr. Hartness' earnings capacity as a truck driver and is information even Mr. White admitted he should have obtained. Ex. C at 43-44, 57, 72.

| By Mr. Williams: | All right. But you don't know how many days, if any, he's actually missed due to bad days? |
|---|---|
| A. | I don't. And I – obviously, I will ask that. I should have asked that. I do not know. I normally ask it on the basis of a 30-day – 30-day period. |

Ex. C at 57.

Accordingly, Mr. White's opinions are not based on sufficiently reliable facts to assist the trier of fact and should be excluded under Rule 702 and *Daubert*.

      B.    <u>Mr. White's opinions are not the product of reliable principles and methods and are inadmissible.</u>

Nothing in Mr. White's reports identifies or explains the methodology he used to arrive at his conclusions. During his deposition Mr. White could only explain it as looking to four factors: age, education, work experience, and medical problems. Ex. C at 26, 63-64.

> I used the – I used the standard that the Department of Labor uses, Social Security Administration and Office of Hearings and Appeals. There's four basis vocational factors: age, education, work history, and any medically determinable physical impairment resulting in a specific vocational handicap affecting return to work. . . .
> That's what I did. I just went through the interview process step by step with him and obtained that information. I don't put some information in that other counselors use. I don't consider it relevant because there's only four vocational factors, and the cases should be judged on those four factors. . . .

Ex. C at 26. Beyond identifying the four factors, Mr. White failed to identify a methodology used to reach his opinions. It seems that it would be impossible for a vocational rehabilitationist assessing his findings "to test the underlying hypotheses and review the standards controlling the technique's operation in an attempt to reproduce the results originally generated." *Elcock*, 233 F.3d at 747.

Mr. White admits that the methodology does not satisfy the factors commonly used to evaluate expert testimony. His methodology has not been subject to peer review, cannot be independently tested, and does not have a known rate of error. Mr. White attempts to validate the methodology under *Daubert* by pointing to its use in

Social Security administration hearings and appeals.  Ex. C at 65-66, 73.  This argument, however, is incorrect as Rule 702 and *Daubert* do not apply to social security proceedings.  *Gangelhoff v. Apfel*, 2000 WL 34032675, 8 (N.D.Iowa 2000).

> [B]ecause Social Security administrative proceedings are not governed by the Federal Rules of Evidence, . . . and because the holdings in *Daubert* and *Kumho* impose an obligation upon the trial judge to ensure that expert testimony is not only relevant, but reliable, the *Daubert* standard is not applicable to the testimony of a vocational expert . . . in a Social Security administrative hearings.

*Id.*  Another significant distinction between the use of Mr. White's method in this case versus a social security setting is "that a Social Security administration hearing is a non adversarial hearing, whereas the *Daubert* standard applies to adversarial proceedings . . . ." *Id.*

Because Plaintiff has failed to identify and explain the method used by Mr. White or provide any support that such a vague and unreproducible method complies with *Daubert*, Mr. White's opinions are unreliable and this Court should exercise its gatekeeping function and exclude Mr. White's testimony.

C.   Mr. White failed to consider crucial factors in reaching his conclusions.

Similar to the vocational expert in *Ammons*, Mr. White failed to consider crucial factors in his opinion.  Among the items Mr. White admits he did not consider were Mr. Hartness' deposition testimony that his condition was continuing to improve, Mr. Hartness' life-long struggle with depression and anxiety, Mr. Hartness' 60 hours of college credit, any occupational fields other than trucking, (even though Mr. Hartness expressed a desire to go back to school and become a teacher) and Mr. Hartness' actual income as a truck driver.

Mr. Hartness' actual income is one example of how the failure to consider crucial factors creates unreliable conclusions that will not assist the trier fact.  Mr. White concluded that Mr. Hartness' income as a truck driver would fall between $20,900 and $26,400.  Ex. E at 1.  But following his voluntary resignation from Union Pacific, Mr. Hartness actually pays himself $1,500 a week or $78,000 a year from the trucking company he operates. Ex. C. at 70.  Mr. White asserted that some of that money may be paid for maintenance and insurance and possibly the loan on the truck, but could not say exactly how much.  Ex. C at 71.  This $50,000 gap highlights that Mr. White's opinions are not reliable and will not assist the trier of fact and should be excluded.

Because there is no evidence in Mr. White's report or his deposition that he "used reliable principles and methods or applied them reliably to the facts of this case to form his opinions," Mr. White's opinions that Mr. Hartness will only be able to work until age 62 and that his income will fall between $20,900 and $26,400 per year do not satisfy the Rule 702 standards for admissibility.  *Pro Service*, 469 F.3d at 1216.

**2.     Because Mr. Marsh Relies On Mr. White's Opinion To Reach His Conclusions, Mr. Marsh's Testimony Should Also Be Excluded.**

Finally, Mr. Marsh's opinion should also be excluded because he relies on Mr. White's opinions concerning Mr. Hartness' earnings capacity and retirement age to calculate Plaintiff's alleged economic losses.  When the expert testimony of one expert is inextricably linked to the testimony of an excluded expert, it is proper to exclude both experts.  *J.B. Hunt*, 243 F.3d at 444.  In *J.B. Hunt*, the Eighth Circuit

affirmed a district court's ruling excluding the testimony of an expert because the expert's testimony was based on the conclusion of an excluded expert. *Id.*

Mr. Marsh is Plaintiff's expert economist and Mr. White's conclusions are indispensable to calculate Mr. Hartness' lost earning capacity. Specifically, Mr. Marsh uses Mr. White's opinions that Plaintiff would retire at age 62 and have an earnings capacity of $20,900 and $26,400 per year to calculate what he believes Mr. Hartness's lost earning capacity to be. Ex. B at 2. Mr. Marsh relies upon these opinions to calculate Mr. Hartness' future actual income, which he deducts from Mr. Hartness' earnings if he remained with Union Pacific for the rest of his work life. Ex. B at 3. Without Mr. White's conclusions, Mr. Marsh lacks a reliable basis to calculate Mr. Hartness' lost earnings capacity. His calculations are thus speculative and should be excluded. See *Gallion v. Toombs*, 268 Ark. 955, 957, 597 S.W.2d 842, 843 (1980).

## CONCLUSION

Therefore, Union Pacific respectfully requests that this Court grant its Motion to Exclude the Opinions and Testimony of Bob White and Jay Marsh because (1) Mr. White's report and testimony are not based on sufficient facts or a reliable methodology and (2) Mr. Marsh relies on Mr. White's conclusions as the basis for his conclusions.

Respectfully submitted,

**KUTAK ROCK LLP**
By: */s/ David L. Williams*
    David L. Williams, (AR 78168)
    Katherine M. Hingtgen (AR 2006223)
    425 W. Capitol Avenue, Suite 1100
    Little Rock, AR  72201
    (501) 975-3113 Telephone
    (501) 975-3001 Facsimile

    ATTORNEYS FOR DEFENDANT,
    UNION PACIFIC RAILROAD
    COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of June, 2008, the foregoing **Brief in Support of Motion to Exclude the Testimony of Bob White and Jay Marsh** was electronically filed with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

**Thomas H. McGowan**
Provost & Umphrey Law Firm, L.L.P.
1 Riverfront Place
Suite 605
North Little Rock, AR 72114
(501) 374-3655
tmcgowan@provostumphrey.com

By: _/s/David L. Williams_
David L. Williams